UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CLARENCE M. EASTERLING,

        Plaintiff,

    v.                                               Case No. 04-C-615

OFFICER N. KOPP, et al.,

        Defendant.

---

## DECISION AND ORDER

---

        Plaintiff Clarence M. Easterling filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that his Fourth Amendment rights were violated when the two City of Kenosha police officers entered his apartment without a warrant and seized approximately ten pizzas that had apparently been stolen earlier that evening from a nearby convenience store. Although Easterling was initially charged with burglary, retail theft, and criminal damage to property based on the facts out of which the case arises, the charges were later dismissed after Easterling plead guilty to other unrelated charges. He is presently serving a lengthy sentence in the Wisconsin prison system for armed robbery, false imprisonment, criminal damage to property, and battery. Presently before me is the defendants' motion for summary judgment. For the reasons that follow, the motion will be granted.

        Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. Whether a material issue of fact is "genuine" necessarily requires some qualitative determination of sufficiency of the evidence. To defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

In order to state a claim for relief under § 1983, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co., v. Sullivan*, 526 U.S. 40, 49-50 (1999). There is no dispute that plaintiff has asserted such a claim here. He alleges that Kenosha Police Officers Kopp and Gonzales violated his Fourth Amendment rights when they searched his apartment and seized the stolen pizzas without a warrant. The Fourth Amendment generally protects an individual's right to be free from warrantless intrusions into a home *See* U.S. Const. amend. IV*; United States v. Foxworth*, 8 F. 3d 540, 544 (7th Cir. 1993) . And it is also clear that the defendants were acting under color of State law at the time they entered Easterling's apartment.

In response to Easterling's claim, the defendants contend that they had the consent of Easterling's roommate to enter the apartment and look for the pizzas. They seized the pizzas, they contend, because there was probable cause to believe they were stolen. If the defendants' contentions are true, Easterling's claim fails as a matter of law. For it is well established that consent by someone authorized to provide it is an exception to the general prohibition of police entry without a warrant:

> While a warrantless entry for the purpose of conducting a search ordinarily violates the Fourth Amendment, a well settled exception to this general rule permits authorities to conduct a search without a warrant if they obtain voluntary consent either from the individual whose property is to be searched, from a third party possessing common authority or joint control over the premises, or from an individual with the apparent authority to consent to the search.

*United States v. Saadeh*, 61 F. 3d 510, 517 (7th Cir. 1995)(citations omitted). And under the plain view doctrine, police are entitled to seize property they come upon in the course of such a search

3

when there is probable cause to believe it constitutes contraband or evidence of a crime. *United States v. Cellitti*, 387 F.3d 618, 623-24 (7th Cir. 2004). Here, the evidence demonstrates that Officers Kopp and Gonzales had consent to search and there was probable cause to believe the pizzas were stolen.

The undisputed facts are that on April 4, 2001, Officers Kopp and Gonzales were dispatched to investigate a report of a retail theft at a convenience store in Kenosha, Wisconsin. (Def. PFOF ¶ 4.) A witness told Officer Kopp that he saw a person later identified as Easterling dragging a box across the floor of a backroom. (Def. PFOF ¶¶ 7-8.) Easterling, who had earlier been given a key for the outside restroom, was then seen leaving the store with two other individuals in a Ford Probe registered to David A. Cornejo. When store personnel checked the storage room, they discovered that a box or carton containing "Connies" pizzas was missing. A locked door leading from the womens' restroom to the area where Easterling was seen had been forced open. (Def. PFOF ¶¶ 21-22; Aff. of Nicole A. Kopp, Ex. 1. Aff. of Albert A. Gonzales, Ex. 1.) Officer Gonzales found an address book and an envelope addressed to Easterling on the floor of the storage room along the path where the box had been dragged. The address on the envelope was University of Wisconsin - Parkside (UWP) Housing, Apt. 7F, where Easterling shared an apartment with four other roommates. (Def. PFOF ¶¶ 6, 9, 28; Gonzales Aff., Ex. 1.)

Officer Kopp proceeded to Easterling's apartment on the UWP campus. (Def. PFOF ¶ 9.) When she arrived, UWP police, who had been asked to assist, had already arrested Easterling on a warrant for operating after revocation. (Def. PFOF ¶¶ 23-24.) Officer Kopp was granted entry to Apt. F by David P. Scheuer, one of Easterling's roommates. (Def. PFOF ¶ 10; Aff. of David P. Scheuer ¶ 7.) Upon entry, she noticed a cardboard pizza box or carton laying on the floor of the

4

living room. Officer Kopp then asked Scheuer if they could look around the apartment. Scheuer gave his consent and, as he watched, Officer Kopp then looked in the refrigerator where she observed approximately ten individually wrapped "Connies" frozen pizzas. She immediately confiscated the pizzas and returned them to the convenience store. (Def. PFOF ¶¶ 11-15; Scheuer Aff. ¶¶ 9-11.) Officer Gonzales, who had arrived at the apartment shortly after Officer Kopp, photographed and took custody of the empty carton on the floor of the apartment. (Def. PFOF ¶¶ 6-8.) Officer Gonzales also interviewed David A. Cornejo, who handed over five "Connies" pizzas he admitted Easterling had given him. (Gonzales Aff. ¶¶ 11-12.)

Based upon these undisputed facts, I conclude that Scheuer gave consent for police officers to search the common areas of the apartment he shared with Easterling, including the refrigerator. As a roommate who shared the apartment with Easterling, Scheuer clearly had the authority to give such consent. *See United States v. Matlock*, 415 U.S. 164, 170 (1974) ("more recent authority here clearly indicates that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."). Scheuer, like all of the occupants of the apartment, had access to the kitchen area and the refrigerator. (Def. PFOF ¶¶ 12-13.) And based on the investigation they had already conducted, the officers had more than sufficient evidence to conclude the pizzas were stolen.

I also conclude from the undisputed facts before me that the defendants did not exceed the scope of the consent given by Scheuer. Of course, one can limit one's consent in terms of the person or persons who can conduct the search and the areas to be searched. *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991). But there is no suggestion that Scheuer placed any limitations on the consent he gave. Limitations can be express or implied. "The standard for measuring the scope of

5

a [person]'s consent under the Fourth Amendment is that of "objective" reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the [person]?" *Id.* at 251. Here, the evidence establishes that there were no express limitations placed on the consent given by Scheuer. He was asked by Officer Kopp "if we could look around" the apartment, and responded "yeah, go ahead, I have nothing to do with this." (Kopp Aff. ¶ 7.) This was a general consent. It was not limited to one person (Scheuer had no reason to allow Officer Kopp to search but refuse Officer Gonzales), and it was not limited to a particular location (Scheuer watched, without objection, as the officers looked around the apartment, including in the refrigerator). (Scheuer Aff. ¶¶ 10-11.)

In response to the defendants' motion, Easterling suggests that Officer Kopp and his former roommate are lying about whether consent to enter and search was given. Relying on the various reports of the responding officers, including those of the UWP officers, he notes that there is no mention of Scheuer specifically giving consent to Officers Kopp or Gonzales to enter and search the apartment. Drawing on criminal cases in which the issue is raised in the context of a motion to suppress, Easterling also suggests that the burden of proving that Scheuer voluntarily gave such consent is on the defendants and he is entitled to a full evidentiary hearing.

Easterling is mistaken as to who has the burden of proof. While it is true that the government bears the burden of proof on the issue of consent to search in a criminal case, this is not a criminal case. This is a civil case in which Easterling seeks money damages from two police officers he has accused of violating his constitutional rights. In a § 1983 action alleging a Fourth Amendment violation, it is the plaintiff's burden to disprove a valid consent once the issue of consent has been raised. *Valance v. Wisel*, 110 F.3d 1269, 1279 (7thCir. 1997) ("In order to prove

6

that the search was unreasonable, then, the plaintiff would be required to show either that he never consented or that the consent was invalid because it was given under duress or coercion.").

On the other hand, even if it was the defendants' burden to prove consent, the result here would be the same. The defendants have presented sworn affidavits by both Officer Kopp, who asked for consent, and Scheuer, who gave it. Easterling does not claim to have witnessed the exchange between them and is not in a position to refute what they say occurred. The fact that it is not mentioned in Officer Kopp's report does not mean consent was not given, especially since Scheuer states in his affidavit that he told the officers "they could look around the apartment." (Scheuer Aff. ¶ 9.) Easterling has offered nothing but his own suspicions in response, but mere suspicions are not enough to withstand a motion for summary judgment. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1986).

Accordingly, I conclude from the undisputed facts before me that the officers entered Easterling's apartment and conducted a brief search with the consent of his roommate. It follows that they did not violate Easterling's rights under the Fourth Amendment. For this reason, the defendants' motion for summary judgment is granted and the action is ordered dismissed.

**SO ORDERED.**

Dated this   7th   day of July, 2005.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

7

Case 1:04-cv-00615-WCG   Filed 07/07/05   Page 7 of 7   Document 50